1   **WO**                                                                                    KM

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9   Jay Martin Jonas,                        )    No. CV 04-2719-PHX-SMM (MEA)
                                             )
10          Plaintiff,                       )    **ORDER**
                                             )
11   vs.                                     )
                                             )
12                                           )
     Dora Schriro, et al.,                   )
13                                           )
            Defendants.                      )
14                                           )
                                             )
15   _____

16          Plaintiff Jay Martin Jonas, confined in the Arizona State Prison Complex-Eyman, filed

17   this *pro se* civil rights action regarding conditions in Special Management Unit II ("SMU

18   II"), the highest custody level in the Arizona Department of Corrections ("ADOC").  On

19   November 22, 2005, Plaintiff filed a Motion for Summary Judgment (Doc. #50). Defendants

20   filed a Cross-Motion for Summary Judgment on January 12, 2006 (Doc. #65).

21          The Court will deny Plaintiff's Motion for Summary Judgment and will grant

22   Defendants Cross-Motion for Summary Judgment.

23   **I. Background**

24          Plaintiff filed his Complaint on November 30, 2004, alleging four grounds for relief:

25   (1) denial of substantive and procedural due process for indefinite confinement in SMU II

26   since November 18, 1998; (2) violation of the Eighth Amendment prohibition against cruel

27   and unusual punishment for conditions of indefinite confinement in SMU II; (3) denial of the

28   Eighth Amendment right to be free from retaliation and excessive force, given his

confinement in SMU II; and (4) violations of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000, because of Defendants' classification of the "Warrior Society" as a Security Threat Group ("STG"), which has eliminated his ability to practice his religion and traditions of his Native American beliefs.

On March 9, 2005, Defendants filed a Motion to Dismiss (Doc. #7).  On July 7, 2005, the Court granted the Motion to Dismiss as to Counts I and III of Plaintiff's Complaint (Doc. #19).  Accordingly, only Counts II and IV remain before the Court.

Plaintiff filed the pending Motion for Summary Judgment (Doc. #50) on November 22, 2005, and Defendants filed their Cross Motion for Summary Judgment (Doc. #65) on January 12, 2006.

## II.  Summary Judgment Standard

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When considering a summary judgment motion, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  These inferences are limited, however, "to those upon which a reasonable jury might return a verdict." Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1220 (9th Cir. 1995).

Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.  Rule 56(e) compels the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and not to "rest upon the mere allegations or denials of [the party's] pleading."  The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  There is no issue

1    for trial unless there is sufficient evidence favoring the non-moving party.  Anderson, 477

2    U.S. at 249.   Summary judgment is warranted if the evidence is "merely colorable" or "not

3    significantly probative."  Id. at 249-50.

4    **III.  Count II: Conditions of Confinement**

5         In Count II, Plaintiff claims that the long-term isolation in SMU II violates the Eighth

6    Amendment because: (1) he lacks adequate opportunity for outdoor recreation, exposure to

7    direct sunlight and fresh air, and adequate clothing for exercise and warmth; (2) his cell is

8    lit 24 hours a day; (3) he is served limited quantities of food; and (4) he is isolated from

9    social and environmental stimulation.  Defendants respond that the conditions satisfy the

10   Eighth Amendment requirement of the "minimal civilized measure of life's necessities."

11   Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Rhodes v. Chapman, 452 U.S. 337, 347

12   (1981)).

13        Plaintiff further claims that as a result of the sedentary lifestyle and reduced calorie

14   diet in SMU II, he suffers from back pain and has lost weight and that he suffers from

15   paranoia and talks to himself as a result of the socially isolated conditions.  Plaintiff has not

16   sought treatment for his paranoia.  Plaintiff has been told by the unit nurse that his back pain

17   is normal and has been prescribed Tylenol for treatment.  (Defs.'s Ex. 5, Pl.'s Dep'n at 41.)

18        The Court finds no issue of triable fact relating to the conditions of Plaintiff's

19   confinement, and finds Defendants are entitled to summary judgment on this claim.

20   **A. Recreation**

21        Inmates in SMU II now receive six hours per week of outdoor recreation[1] for two-hour

22   periods three days per week. (Pl.'s Opp'n to Cross-Mot. for Summ. J. ("Pl.'s Opp'n") at 5;

23   Def.'s Statement of Facts ("DSOF") at ¶42.)  The recreation area at SMU II is a rectangular

24   area measuring approximately 20 feet by 10 feet. (Pl.'s Dep. at 27.)   The area is made up of

25   cement wall and floors and has a steel mesh roof, which allows in outside air, and at certain

26   times of the day, sunlight.  (DSOF at ¶43; Pl.'s Dep. at 27.)  There is no exercise equipment

27

28        [1]At the time Plaintiff filed the Complaint, SMU II inmates received three hours per week of
     outdoor recreation. (DSOF at ¶41.)

1    in the recreation area, although SMU II inmates may request the use of a handball during

2    their recreation time.  (DSOF at ¶43.)  Inmates are permitted to exercise in their cells.

3    (DSOF at ¶41.)  To keep warm and for exercise, Plaintiff may buy a jumpsuit or sweats from

4    the inmate store. (DSOF at ¶37.)

5        Plaintiff states that he mainly walks during his recreation time.  There is no evidence

6    to show that he has been prevented from using the recreation yard and Plaintiff states he

7    almost always uses his recreation time.  (Pl.'s Dep. at 29.)  While the "deprivation of outdoor

8    exercise could constitute cruel and unusual punishment," Allen v. Sakai, 48 F.3d 1082, 1087

9    (9th Cir. 1994), there is no allegation in this case that Plaintiff is denied outdoor recreation.

10   Further, Plaintiff offers no support for his argument that the outdoor recreation area in SMU

11   II is constitutionally inadequate; Plaintiff acknowledges he receives outdoor air and sunlight

12   at times, and that recreation is sufficiently large enough for him to walk around . (Pl's Dep.

13   at 27.)  Finally, Plaintiff makes no argument in his summary judgment motion, nor does he

14   offer any evidence, that he is not provided with sufficient clothing for exercise.

15       **B. Lighting**

16       SMU II is a maximum security facility.  Within SMU II, cell lights are on at all times.

17   (Pl.'s Statement of Facts ("PSOF") at ¶11, DSOF at ¶19.)  However, lights are dimmed

18   between the hours of 10:00 p.m. and 4:00 a.m. Sunday through Thursday, and between 12:00

19   a.m. and 4:00 a.m. Friday through Saturday. (DSOF at ¶19.)  Defendants offer evidence

20   demonstrating that during the day, with the cell door open, and the daylight on and the

21   nightlight off, the average light level in a cell near the sink was 72 footcandles ("FC").[2]

22   (DSOF at ¶ 22.)  At night, with the cell door open, the daylight off and the nightlight on, the

23   average light level in a cell near the sink was 1 FC. (Id.)  Plaintiff states that dimmed lights

24   are bright enough for him to read a book or write letters.  (Pl's Opp'n at 5.)  Plaintiff further

25   states that he cannot sleep unless his eyes are covered.  (Id.)

26

27

28       [2]A footcandle is a unit of illuminance measurement.  One FC represents the amount of light
     one candle produces per square foot.  (See Defs.'s Ex. 4, Decl. of Gerald Katafiasz, Electrical
     Engineer, LSW Engineers Arizona, Inc., at ¶5.)

1    Defendants argue that the lighting in SMU II does not violate the Eighth Amendment.

2  For security reasons, during sleeping hours, the lights in Plaintiff's cell are not turned off but

3  are significantly dimmed.  The lower light level is less disruptive than officers using bright

4  flashlight to make inmate checks. (DSOF ¶29.)  Plaintiff states that he is able to sleep with

5  a cloth over his eyes and has also admitted that he has not sought treatment for the headaches

6  he alleges result from the lighting in SMU II. (Pl.'s Dep. at 43.)  There is no evidence,

7  beyond Plaintiff's mere allegations, to show that the constant illumination, which included

8  dimmed lights during sleeping hours, deprived Plaintiff of his health.  Moreover, this Court

9  has previously found in a separate case that the lighting conditions in SMU II, which were

10  identical to those at issue in this case, do not violate the Eighth Amendment.  See Baptisto

11  v. Ryan, 2006 WL 798879, 28 (D. Ariz. 2006) (the minimal amount of light at night in SMU

12  II, which is similar to that given off by a nightlight, is insufficient to satisfy the objective

13  prong of the Eighth Amendment analysis).

14    **C. Food**

15    SMU II inmates are given a reduced calorie diet based on a less active life-style.

16  (DSOF at ¶46; Pl.'s Opp'n at 5.)  This diet was developed by a dietician and provides SMU

17  II inmates with three meals per day during the week and two meals per day during the

18  weekends. (DSOF at ¶46 & McWilliams Decl. at ¶25.)   Plaintiff alleges that he has lost

19  weight while confined in SMU II, however Plaintiff also states that he gained weight during

20  the holiday season while confined in SMU II. (Pl.'s Dep. at 31.) Inmates in SMU II are not

21  permitted to purchase food items from commissary, with the exception of certain items

22  during December. (DSOF at ¶47.)

23    Plaintiff does not allege that he has been denied any meals as described above.

24  Although Plaintiff alleges that his overall weight has decreased from 200 to 163 pounds in

25  the four years that he has been held in SMU II (Plaintiff is five feet ten inches tall), there is

26  no evidence, beyond Plaintiff's allegations, to show that Plaintiff's health suffers from lack

27  of nutrition.  Plaintiff's weight loss was gradual (less than ten pounds per year) and his

28  current weight appears to be within the healthy range for an adult male of his height.

1  Moreover, Plaintiff has himself stated that he has gained weight on occasion while confined
2  in SMU II.

3      **D. Social Contact**

4      SMU II inmates are allowed one non-contact visit per week for a maximum of two
5  hours, with up to four visitors at one time (DSOF at ¶38), and one five-minute phone call per
6  week (Id. at ¶39).  Inmates also have contact with staff and are permitted to see prison and
7  religious counselors.  Plaintiff may have a radio and a television. (DSOF ¶35.)

8      Plaintiff and other inmates in SMU II are not allowed to work or participate in
9  vocational or education programs, although they may pursue individual programs within their
10  cells.  (DSOF at ¶51.)  Plaintiff presents no evidence to contradict facts and Plaintiff has not
11  shown that this social interaction is constitutionally inadequate.

12  **IV. Count IV: Religious Exercise**

13      In Count IV of the Complaint, Plaintiff alleges that Defendants have violated the
14  Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc-1,
15  by prohibiting him from engaging in pipe ceremonies, smudging, wearing of colored
16  headbands, and using a sweat lodge.  Plaintiff also alleges that Defendants have violated
17  RLUIPA by refusing to hire a Native American spiritual adviser.

18      Under RLUIPA, "[n]o [state or local] government shall impose a substantial burden
19  on the religious exercise of a person residing in or confined to an institution," unless the
20  government shows that the burden furthers "a compelling governmental interest" and does
21  so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2).

22      Courts have widely recognized that maintaining institutional security is a compelling
23  government interest.  See Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 ("It bears repetition
24  . . . that prison security is a compelling state interest, and that deference is due to institutional
25  officials' expertise in this area"); Warsolider v. Woodford, 418 F.3d 989, 998 (9th Cir. 2005)
26  (prison security is clearly a compelling governmental interest); Harris v. Chapman 97 F.3d
27  499, 503-04 (11th Cir. 1996) (states' "compelling interest in security and order within their
28  prisons" especially applies in close custody facilities).

**A. Spiritual Adviser**

Plaintiff's first contention that the ADOC is required by RLUIPA to hire a Native American spiritual adviser to assist Native American inmates in observance of their religious practices is meritless. Not "every religious sect or group within a prison–however few in number–must have identical facilities or personnel. . . nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." Allen v. Toombs, 827 F.2d 563, 568 (9th Cir. 1987). The Court notes that Defendants' evidence makes clear that Plaintiff may have access to a spiritual adviser, but that Plaintiff is responsible for co-ordinating such a visit. (Def's Ex. 7, Linderman Decl.[3] at 19.) Plaintiff has not alleged that he has been denied access to a spiritual adviser, only that one has not been provided for him. Plaintiff has not demonstrated that his ability to practice his religion is substantially burdened by the requirement that he bear the responsibility for co-ordinating his visits with a spiritual adviser, and the Court finds no RLUIPA violation in the ADOC's policy.

**B. Smudging and Pipe Ceremonies**

With respect to smudging and pipe ceremonies, the facts offered by both Plaintiff and Defendants suggest that while Plaintiff's ability to practice these ceremonies is limited, he is not prohibited from engaging in them. Plaintiff is allowed to perform smudging during his recreational time. (DSOF at ¶83; Pl.'s Dep. at 59.) Plaintiff may purchase the herbs required for smudging through an ADOC approved vendor or use donated smudging materials, and is required to provide ADOC staff with notice of when he intends to perform smudging. (DSOF at 89; Pl.'s Dep. at 59-60.) Indigent Native American inmates in SMU II, who have registered their ethnicity with the ADOC, may use donated smudging materials. (Linderman Decl. at ¶16.)

Plaintiff has not demonstrated how being required to purchase herbs through an ADOC approved vendor violates his free exercise rights when ADOC has a compelling security interest in controlling and monitoring the flow of materials in and out of the prison. With respect to donated herbs, Plaintiff offers no evidence that he is indigent and has

---

[3]Michael Linderman is the Administrator of Pastoral Services for the ADOC.

1    requested the herbs, or that he was refused herbs for smudging ceremonies.

2            Plaintiff may also conduct a personal pipe ceremony during recreation time. (DSOF

3    at ¶92.)   Plaintiff may arrange for a Native American spiritual adviser to conduct the

4    ceremony (DSOF at ¶90.)  ADOC has been advised that an inmate may conduct a personal

5    pipe ceremony without a spiritual adviser, although Plaintiff appears to disagree with this

6    statement. (DSOF at ¶90; Pl's Dep. at 65.)

7            Defendants present evidence that a pipe for use in a pipe ceremony is available in

8    Plaintiff's unit.  (Linderman Decl. at ¶ 21.)  Plaintiff does not dispute this statement and he

9    does not claim in his motion or statement of facts that he has been denied access to the pipe.

10           Even assuming, for purposes of this Order, that Defendants' limits on smuding and

11   pipe ceremony practices constitutes a substantial burden on Plaintiff's ability to exercise his

12   religion, Defendants demonstrate that only allowing inmates to conduct the smudging and

13   pipe ceremonies–both of which are smoke generating–outside during recreation time is the

14   least restrictive means of maintaining institutional security.  Plaintiff makes no credible

15   argument that less restrictive practices are available that would still account for ADOC's

16   security interests; Plaintiff appears to suggest only that he be allowed to perform these

17   ceremonies at his own discretion without having to inform prison staff in advance.

18           The Court finds no RLUIPA violation in the smudging or pipe ceremony polices.

19   **C. Headbands**

20           Plaintiff is permitted to wear colored headbands when in the enclosed recreational

21   area and during times when he is specifically involved in religious practices, but is not

22   permitted to wear the headbands at other times. (DSOF at ¶ 88.) The ADOC restricts the use

23   of headbands to prevent violence associated with open gang affiliation. (Id.) Defendants

24   argue that the exception for religious practice is the least restrictive means of maintaining

25   security.  Plaintiff essentially argues that he should be allowed to wear headbands at all

26   times.  (Pl.'s Dep. at 71.) Again assuming that Defendants' restrictions on headbands

27   constitutes a  substantial  burden  on  Plaintiff's  religious  practice,  Defendants  have

28   demonstrated a compelling interest in maintaining security and discouraging open gang

- 8 -

1    affiliation and have demonstrated that the exception to the headband policy for religious

2    practices is the least restrictive means of maintaining security by preventing overt gang

3    identification.  Accordingly, the Court finds no RLUIPA violation in ADOC's headband

4    policy.

5        **D.  Sweat Lodge**

6        There is no sweat lodge in SMU II.  (DSOF at ¶93; PSOF at 24.)  The ADOC has not

7    constructed sweat lodges in SMU II because there is no area which can accommodate a sweat

8    lodge (DSOF at ¶93), and because SMU II inmates may never be out of view of security

9    (DSOF at ¶94).  An inmate using a sweat lodge is necessarily out of sight of prison staff.

10   Because SMU II inmates must remain within sight of ADOC staff at all times, there appears

11   to be no less restrictive means of maintaining security while allowing inmates to participate

12   in sweat lodge ceremonies.  The Court finds no RLUIPA violation in ADOC's policy

13   regarding sweat lodges in SMU II.

14       **E.  First Amendment**

15       Plaintiff also argues that Defendants' policies violate his First Amendment free

16   exercise rights.  "When a prison regulation impinges on inmates' constitutional rights, the

17   regulation is valid if it is reasonably related to legitimate penological interests."  <u>O'Lone v.

18   Estate of Shabazz</u>, 482 U.S. 342 (1987); <u>Turner v. Safely</u>, 482 U.S. 78 (1987).  Because the

19   Court has found that the restrictions at issue protect the state's compelling interest in

20   maintaining prison security, these restrictions are necessarily reasonably related to legitimate

21   penological interests.

22       Defendants are therefore entitled to summary judgment under both RLUIPA and First

23   Amendment analyses on Plaintiff's religious claims.

24   **V.  Conclusion**

25       The Court finds no genuine issue of triable fact.  An analysis of the issues and relevant

26   law shows Defendants are entitled to summary judgment.  The Court will grant Defendants'

27   Cross-Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

28   //

1   //

2   //

3   //

4   **IT IS ORDERED:**

5        (1) Plaintiff's November 22, 2005 Motion for Summary Judgment (Doc. #50) is

6   **DENIED**.

7        (2) Defendants' January 12, 2006 Cross Motion for Summary Judgment (Doc. #65)

8   is **GRANTED**.

9        (3)  The Clerk of Court must close this case and enter judgment accordingly.

10       DATED this 25th day of September, 2006.

11

12

13

14                                            Stephen M. McNamee

15                                        United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28